UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EHAB HASSAN,

Plaintiff,

-against-

LVNV FUNDING LLC; RESURGENT CAPITAL SERVICES, L.P.,

Defendants.

**MEMORANDUM & ORDER**
25-CV-6726 (NRM) (CHK)

**NINA R. MORRISON**, United States District Judge:

*Pro se* Plaintiff brings the instant action under the Fair Credit Reporting Act ("FCRA"), accusing Defendants of reporting a credit account in his name without possessing or providing legally valid documentation to do so. The present action follows a complaint filed in New York City Civil Court between the same parties, with additional claims under the FCRA, the Fair Debt Collection Practices Act ("FDCPA"), and New York General Business Law ("NYGBL") § 349. Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), invoking the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). For the reasons discussed below, Defendants' motion is denied.

## BACKGROUND

### *A. Initial Complaint*

Plaintiff Ehab Hassan initially filed this action on December 5, 2025, accusing Defendants LVNV Funding LLC ("LVNV Funding") and Resurgent Capital Services, L.P. ("Resurgent Capital") of reporting a Credit One Bank credit account (otherwise known as a "tradeline") in his name to credit reporting agencies without establishing his ownership over the account. *See* Compl. at 4–5, ECF No. 1.

Plaintiff alleged that in May 2025, he discovered the tradeline being furnished in his name by LVNV Funding, without receiving a document "identifying, evidencing, or establishing legal ownership of the alleged account" from either LVNV Funding or Credit One Bank. *Id.* at 9. In May and June 2025, Plaintiff disputed the tradeline with Defendants — as well as with Experian, Equifax, and TransUnion (consumer reporting agencies or "CRAs") — and requested account validation and ownership documentation from these parties.[1] *See id.* at 10–11. However, he alleged that Defendants "failed to produce any of the records required to validate, service or furnish the alleged account" and that they "failed to provide any of these materials to the Consumer Financial Protection Bureau [('CFPB')]."[2] *Id.* at 11–12; *see also id.* at

---

[1] Plaintiff specifically requested "a signed agreement, itemized billing statements, proof of assignment of the alleged account, any Bill of Sale referencing Plaintiff, any Schedule of Accounts referencing Plaintiff, proof of payment or consideration for the alleged account, and all contractual terms applicable to the alleged account." Compl. at 10 (citation modified).

[2] The Complaint also alleged that Defendants failed to produce records such as "any signed agreement or application, any legitimate itemized billing statements or full transaction history, any Bill of Sale referencing Plaintiff by name or account

13 (alleging that the chain of title provided to the CFPB was "merely an unsubstantiated internal listing of alleged ownership transfers" and that it "did not contain any date of transfer to [LVNV Funding]" or establish "when, whether, or how [LVNV Funding] acquired the alleged debt"); *id.* at 14–15 (claiming that Defendants failed to provide legally sufficient, written validation notice of their intent to furnish the disputed account to any CRA);[3] *id.* at 16–17 (asserting that Defendants lacked payment history and account data information needed for Metro 2 credit reporting).

Defendants allegedly received Plaintiff's disputes on May 25, 2025, but did not mark the tradeline as disputed at that time. *Id.* at 18. Instead, in their response to the CFPB on June 26, 2025, they stated that "the account will be submitted to the credit bureaus during the next reporting cycle for dispute notation." *Id.* (citation modified). The Complaint further alleged that Defendants lacked a New York City debt collection license, undermining their representation to CFPB that they "comply with all applicable regulatory and licensing requirements in each state where they operate." *Id.* at 19.

---

number, any Schedule of Accounts identifying Plaintiff, any chain-of-title showing continuous assignments, any proof that LVNV [Funding] paid for or acquired Plaintiff's alleged account, any pre-furnishing delinquency notice, any FDCPA 'g-notice,' and any ownership or servicing records whatsoever." *Id.* at 11 (citation modified).

[3] Defendants allegedly sent the CFPB a copy of the letter providing FDCPA validation notice to Plaintiff, through their servicer (Halsted Financial Services, LLC). *Id.* at 14. According to the Complaint, this letter is dated March 29, 2024, eight days after Defendants reported the disputed tradeline to CRAs on March 21, 2024. *Id.* at 15.

The Complaint also asserted that Defendants failed to verify the contents and/or accuracy of the underlying records they provided to CRAs and the CFPB. For instance, the Monthly Transaction Statements contained, *inter alia*, miscalculations; interest charges calculated based on missing transactions; discrepancies between the available credit and the purchases, cash advances, balance transfers, and credit activity for a given statement period; unexplained fees; and month-to-month balance increases in the absence of consumer activity, including when the account was designated as "closed." *Id.* at 20–22. In addition, the cardholder agreement supposedly governing the disputed account and submitted to the CFPB included no proof of Plaintiff's acceptance or of the account's activation. *See id.* at 24–28. Finally, the Complaint alleged that Experian deleted the disputed account in its credit report issued on July 7, 2025, and indicated that Plaintiff "may have been a victim of fraud" in its correspondences to CFPB in August 2025. *Id.* at 28–29. However, Defendants initiated two inquiries into Plaintiff's credit report in October 2025, after the disputed tradeline had been deleted. *Id.* at 29. Plaintiff maintained that there was no permissible purpose behind these inquiries under the FCRA and that, afterwards, Experian froze Plaintiff's consumer file "using a code reserved for suspected federal-law violations." *Id.* at 30.

Plaintiff alleged that Defendants' conduct negatively impacted his credit score, which resulted in the denial of his financing and credit applications. *Id.* at 31–32. The Complaint brought eight claims under the FCRA and the FDCPA, as well as one claim under the NYGBL. *Id.* at 30–31. Specifically, Plaintiff brought FCRA claims

under 15 U.S.C. §§ 1681s-2(b)(1)(A)–(C) and 1681e(b); FDCPA claims under 15 U.S.C. §§ 1692e(2), (8), (10), 1692f, and 1692g(b); and one NYGBL claim under § 349.

### ***B. Amended Complaint***

On March 11, 2026, Plaintiff filed an Amended Verified Complaint ("AC"), bringing only FCRA claims under 15 U.S.C. §§ 1681s-2(b) and 1681b, AC ¶¶ 83–105, ECF No. 18 — *i.e.*, dropping his FDCPA and NYGBL claims, as well as many of his FCRA claims. The AC contains many of the same facts as described in the original Complaint, including that Defendants furnished a disputed tradeline to CRAs and continued to report LVNV Funding as the current owner of the credit account after Plaintiff disputed its ownership. *See, e.g.*, *id.* ¶¶ 20–21, 23, 37 (listing Plaintiff's challenges to the disputed tradeline); *id.* ¶¶ 41, 45–46 (describing monthly transaction statements reporting activity from the account, despite it being labeled as closed), *id.* ¶¶ 52–54, 64–66 (describing irregularities within monthly transaction statements), *id.* ¶¶ 76–77 (alleging that LVNV Funding inquired into, accessed, or obtained Plaintiff's consumer credit report in October 2025).

Plaintiff alleges that he applied for a loan through Upgrade "in connection with his business operations," but that his application was denied after Upgrade obtained Plaintiff's credit history from TransUnion. *Id.* ¶¶ 11–12, 14. He alleges that the credit report contained the disputed tradeline furnished by LVNV Funding and was the basis "in whole or in part" for Upgrade's decision to deny his loan application. *Id.* ¶¶ 13, 15. He also states that he incurred $900 in out-of-pocket expenses in disputing Defendants' reporting conduct. *Id.* ¶ 17.

The AC states that Defendants "have represented that they investigated [Plaintiff's] disputes and verified the tradeline as accurate" and produced "portfolio-level transfer documents in support of their claimed chain of title." *Id.* ¶¶ 22, 24. However, it contends that the transfer documents lacked "account-level identification of Plaintiff's alleged account," and that Defendants have failed to produce "any affidavit from an originating creditor or upstream seller authenticating the contents of the referenced electronic receivable file or confirming, in account-specific terms, that Plaintiff's alleged account was included in the transfer to LVNV [Funding]." *See id.* ¶¶ 26–32.

On June 26, 2025, in their written response to CRAs, Defendants allegedly acknowledged Plaintiff's disputes and represented that they had responded. *Id.* ¶ 34. Defendants specifically "verified the tradeline as accurate without conducting a meaningful investigation tailored to the identity, ownership, balance and reporting-structure challenges raised." *See id.* ¶¶ 38–40, 42. While Defendants labeled the account as disputed internally on July 9, 2025, they allegedly failed to provide documentation "reflecting when the [account's] disputed status was first transmitted to each CRA or first appeared on Plaintiff's [credit] reports." *Id.* ¶¶ 48–49, 55.

The AC reiterates that, following Plaintiff's disputes, Defendants verified the Credit One Bank tradeline as accurate and continued to furnish it to CRAs. *Id.* ¶¶ 59–63. It also notes the transaction irregularities on the monthly account statements for the disputed account and the lack of evidence linking Plaintiff to the credit account. *Id.* ¶¶ 64–70, 74–75. Finally, the AC alleges that LVNV Funding

inquired into Plaintiff's consumer credit report on October 13 and October 14, 2025 — while Plaintiff was disputing the tradeline. *Id.* ¶¶ 76–78.

According to the AC, Defendants violated 15 U.S.C. § 1681s-2(b) by failing to "conduct a reasonable investigation prior to verifying the tradeline" and "review or possess account-level documentation identifying Plaintiff's specific account in any assignment, transfer schedule, or equivalent record linking the account to" LVNV Funding. *See id.* ¶¶ 83–98. Defendants also allegedly violated 15 U.S.C. § 1681b by obtaining Plaintiff's Experian consumer report without a permissible purpose authorized by statute. *See id.* ¶¶ 99–105. Plaintiff seeks actual, statutory, and punitive damages under the FCRA, as well as declaratory and equitable relief. *Id.* at 17–18.

### *C. State Court Action*

The instant action follows a complaint filed by Plaintiff against Defendants on August 13, 2025, in Civil Court of the City of New York, County of Kings, No. CV-016370-25/KI ("State Court Action"). *See* ECF No. 48-2 ("State Compl."). The State Court Action's complaint is significantly shorter than what was filed in the present action, but it contains substantively the same allegations: it details how Plaintiff discovered a tradeline being furnished in his name by Defendants, filed disputes with Defendants and CRAs, and requested validation and proof of ownership documents from Defendants. *Id.* ¶¶ 6–8. It also alleges that Defendants failed to provide, *inter alia*, proof of ownership over the disputed account, any notice sent to Plaintiff, a New York City debt collection license — yet continued to furnish the tradeline to CRAs

after Plaintiff filed his disputes. *Id.* ¶¶ 9–10. The State Court Action brings fifteen causes of action, including: FCRA claims under 15 U.S.C. §§ 1681, 1681e(b), 1681i(a)(1)(A), 1681i(a)(6)(B)(iii), 1681s-2(a)(1)(A)–(B), 1681s-2(a)(3)–(4), 1681s-2(a)(7), and 1681s-2(b)(1)(A)–(D); FDCPA claims under 15 U.S.C. §§ 1692e(8) and 1692g(b);[4] and one NYGBL claim under § 349. *See id.* ¶¶ 17–31. Plaintiff seeks statutory and punitive damages under the FCRA, FDCPA, and NYGBL, "in a combined total amount not to exceed $50,000," as well as: a declaration that the disputed tradeline is "inaccurate, unverifiable, and unauthorized for consumer reporting"; an order "directing the permanent deletion of the [LVNV Funding] tradeline from all of Plaintiff's consumer credit reports"; an order directing the tradeline to be labeled as invalid and unverifiable to CRAs; and referral to the matter to regulatory agencies, including the CFPB. *Id.* at 17–18 (citation modified).

## PROCEDURAL POSTURE

Following a pre-motion conference before the Court on April 16, 2026, and a settlement conference on May 19, 2026, the Court directed the parties to propose a briefing schedule for Defendants' anticipated motion to dismiss. *See* Min. Entries dated Apr. 17, 2026, and May 19, 2026; Dkt. Order dated June 12, 2026. The Court further instructed the parties to continue with discovery while the motion to dismiss was under submission. Dkt. Order dated June 12, 2026. Defendants' motion deadline was originally set for July 9, 2026, with Plaintiff's opposition deadline set for July 24,

[4] The State Court Action complaint groups Plaintiff's FDCPA claims into a single cause of action.

2026, and Defendants' reply deadline set for August 7, 2026. *See* Dkt. Order dated June 23, 2026.

On July 6, 2026, citing "scheduling conflicts," Defendants sought a three-week extension to their motion deadline (to July 30, 2026), as well as their opposition and reply deadlines. *See* ECF No. 35. Plaintiff opposed this request, arguing that Defendants failed to establish good cause for modifying the briefing schedule. *See* ECF No. 37 at 1–2.

The Court granted Defendants' request in part, directing Defendants to file their motion by July 20, 2026; Plaintiff to file his opposition by August 3, 2026; and Defendants to file their reply by August 17, 2026. Dkt. Order dated July 8, 2026. However, Defendants renewed their request on July 8, 2026, noting that counsel would be traveling for pre-scheduled family vacations and asking the Court to extend their motion deadline to July 24, 2026. ECF No. 39. The Court granted the renewed extension request. Dkt. Order dated July 9, 2026.

On July 30, 2026, Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), which included a declaration by defense counsel.[5] *See* Decl. in Supp. of Mot. to Dismiss ("Wildermuth Decl."), ECF No. 48-1; *see generally* ECF No. 48. Plaintiff filed his opposition on August 1, 2026. Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 49. In it, he explicitly "alert[ed] the Court

---

[5] Defendants originally filed a cover letter on July 24, 2026, indicating service of the motion to dismiss upon Plaintiff, per the Court's Individual Rules. *See* ECF No. 45. However, consistent with the original briefing scheduling order, the Court directed Defendants to file the motion to the public docket by July 30, 2026. *See* Dkt. Order dated July 28, 2026.

and preserve[d] his right to seek formal sanctions" pursuant to Fed. R. Civ. P. 11. *See id.* at 31–32. Plaintiff specifically accused Defendants of committing a "fraud on [the] Court" through the Wildermuth Declaration by describing the AC as "identical to his original complaint" and by representing that "both actions center exclusively on credit disputes from May and June 2025"; "that the State Court Action was filed on August 28, 2025"; and that Defendants' summary judgment motion was filed in state court on January 26, 2026. *Id.* at 4–5.

Defendants timely filed their reply on August 17, 2026, Mem. of Law in Reply and in Further Supp. of Defs.' Mot. to Dismiss ("Reply"), ECF No. 53 — after the Court denied another, roughly two-week extension request "due to pre-scheduled vacation time and other work deadlines," *see* ECF No. 50; Dkt. Order dated Aug. 4, 2026. Along with their reply, Defendants filed an amended declaration in support of their motion to dismiss, seeking to "correct[] prior inconsistencies in the Declaration filed on July 30, 2026." Am. Decl. in Supp. of Mot. to Dismiss ("Am. Wildermuth Decl.") ¶ 1, ECF No. 52. The amended declaration was filed as a motion to amend, correct, and/or supplement the original motion to dismiss. *See* ECF No. 52.

On August 18, 2026, Plaintiff filed an opposition to the amended declaration and moved to strike Defendants' reply. ECF No. 54. He argued that the motion to dismiss included deficiencies when filed and that these cannot be cured through a reply or amended declaration, which introduced new exhibits and "reconstruct[s] the factual foundation upon which [the motion to dismiss] was filed and opposed." *See id.* at 5–7. Defendants responded on August 19, 2026, labelling Plaintiff's submission

as an improper sur-reply and clarifying that the amended declaration was incorrectly filed as a motion, instead of a supplemental declaration. *See* ECF No. 57 at 1–2. Plaintiff replied again — also on August 19, 2026 — insisting that the amended declaration was a new motion that offered new evidence and represented a shift in their legal theory. ECF No. 58 at 1–2. Following this submission, the Court directed the parties to "refrain from submitting additional filings relating to the motion to dismiss without prior leave of the Court." Dkt. Order dated Aug. 24, 2026.

## **LEGAL STANDARD**

Defendants argue that this Court should abstain from exercising subject matter jurisdiction, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and brings the instant motion to dismiss under Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Zulli v. JP Morgan Chase Bank*, No. 23-CV-3519 (JMA) (AYS), 2025 WL 2482300, at *5 (E.D.N.Y. Aug. 27, 2025) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see Bongiovanni v. PennyMac Corp.*, No. 19-CV-3260 (EK) (VMS), 2021 WL 1193043, at *3 (E.D.N.Y. Mar. 30, 2021) ("A motion to abstain is considered a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." (quoting *Krondes v. Nationstar Mortg., LLC*, No. 17-CV-4974, 2018 WL 2943774, at *2 (S.D.N.Y. June 12, 2018), *aff'd*, 789 F. App'x 913 (2d Cir. 2020))).

The party asserting the Court's subject matter jurisdiction — in this case, Plaintiff — has the burden of establishing jurisdiction by a preponderance of the evidence. *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017). However, "the district court must take all uncontroverted facts in the complaint [] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* (quoting *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016)).

## DISCUSSION

In *Colorado River*, the Supreme Court set forth the conditions under which a federal court may choose to exercise its discretion and abstain from a case over which it otherwise has jurisdiction, *i.e.*, when there is a pending state court action concerning the same matter as the federal court action. The *Colorado River* Court emphasized that the "pendency of an action in [] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," since courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist.*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). However, it noted that a federal court may consider "principles rest[ing] on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" and choose to abstain from a case over which it otherwise has jurisdiction — although "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding" are "exceptional." *Id.* at 817–18 (citation omitted).

### *A. Parallelism*

The *Colorado River* doctrine only applies when federal and state cases are "parallel," *i.e.*, when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Phillips*, 252 F. Supp. 3d at 295 (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). Federal and state proceedings are not parallel because they contain "mere commonality in subject matter," particularly if they involve different parties, issues, and remedies. *See Mochary v. Bergstein*, 42 F.4th 80, 86 (2d Cir. 2022) (citation modified); *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012) ("In determining whether two actions are parallel for purposes of *Colorado River* abstention, the court may consider whether the actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested."). Instead, "parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Phillips*, 252 F. Supp. 3d at 295 (quoting *Abe v. N.Y. Univ.*, No. 14-CV-9323 (RJS), 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016)). Notably, parallelism does not require "perfect symmetry" of the parties or the issues litigated. *Id.*

Defendants are right to point out that the parties in the instant action and the State Court Action are identical and that many of the allegations between the two cases are the same. *See* Defs.' Mem. of Law in Supp. of Their Pre-Answer Mot. to Dismiss Pl.'s Compl. ("Defs.' Mem.") at 13, ECF No. 48-11. Both cases deal with the same fundamental issue: whether Defendants reported a tradeline in Plaintiff's name

without providing legally valid documentation to support such. Both the AC and the State Court Action complaint include claims under 15 U.S.C. § 1681s-2(b), which outlines the "[d]uties of furnishers of information upon notice of dispute." *See* AC ¶¶ 83–98; State Compl. ¶¶ 22–25. While Plaintiff's opposition to the motion to dismiss dives into the minutiae of § 1681s-2(b) and addresses factual disputes more appropriate for resolution post-discovery, *see* Pl.'s Opp'n at 10–12 (accusing Defendants of misquoting the statute and making a "severe, bad-faith misrepresentation to the court" in their State Court Action summary judgment motion), there is no doubt that § 1681s-2(b) claims were brought before both this Court and the New York City Civil Court.

However, there is almost no likelihood — let alone a substantial one — that the State Court Action will dispose of *all* the claims presented before the Court. *See, e.g.*, *Bongiovanni*, 2021 WL 1193043, at *4 (declining *Colorado River* abstention because two of the ten federal claims (*i.e.*, under the FDCPA and the Real Estate Settlement Procedures Act) had no analogue within the state action). Plaintiff's § 1681b claim here arises from Defendants' conduct on October 13 and October 14, 2025, which took place *after* the State Court Action was filed on August 13, 2025. *See* AC ¶¶ 99–105; State Compl. Even if Plaintiff were to amend his complaint in the state proceeding, the § 1681b claim would likely not relate back to events and occurrences detailed in the original complaint. *See Nemeth v. K-Tooling*, 40 N.Y.3d 405, 410 (2023) (highlighting how New York state's relation back doctrine is "modeled on the federal analog" in Fed. R. Civ. P. 15(c)). He would likely have to serve a

supplemental pleading, which underscores the lack of parallelism between the federal and state court actions here. The State Court Action is thus not an "adequate vehicle" to address Plaintiff's concerns that his consumer report was obtained under impermissible circumstances, and the two actions are not parallel. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (noting that if there is "any substantial doubt" as to the state court's ability to bring a "complete and prompt resolution of the issues between the parties . . . it would be a serious abuse of discretion to grant the stay or dismissal" under *Colorado River*).

### *B.* Colorado River *Factors*

Even if the Court were to find the present action and the State Court Action to be parallel, the *Colorado River* factors would still weigh against abstention. These factors include:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Green Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted). "Only the clearest of justifications will warrant dismissal"; thus, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16).

1. Jurisdiction Over Res

Neither party contends that either the state or federal action involve an *in rem* proceeding or jurisdiction over property, and the Court finds no reason to conclude otherwise. *See Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 426 (2d Cir. 2004) (noting that "an *in personam* action involves a controversy over liability rather than over possession of a thing"). Thus, the first *Colorado River* factor weighs against abstention. *See Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("We have held that the absence of a res 'point[s] toward exercise of federal jurisdiction.'" (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 113 (2d Cir. 1995)).

2. Inconvenience of the Federal Forum

The second factor also weighs against abstention. Both parties acknowledge that these actions are being litigated within Kings County, New York, in courthouses that are both located in downtown Brooklyn. *See* Def.'s Mem. at 19; Pl.'s Opp'n at 29. While some district courts have found inconvenience within the federal forum because "there is plainly inconvenience in having to litigate actively in both state and federal courts at the same time," *see Phillips*, 252 F. Supp. at 299 (quoting *Lefkowitz v. Bank of N.Y.*, 676 F. Supp.2d 229, 275 (S.D.N.Y. 2009)), the Second Circuit has held that "where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." *Vill. of Westfield*, 170 F.3d at 122 (quoting *Youell*, 48 F.3d at 113).

3. <u>Risk of Piecemeal Litigation</u>

The third factor — the risk of piecemeal litigation — is the most important to the *Colorado River* analysis. *See Moses H. Cone*, 460 U.S. at 16 (noting that in *Colorado River* itself, "by far the most important factor . . . was the clear federal policy of avoidance of piecemeal adjudication" (citation modified)); *Gibson v. Bank of Am., N.A.*, No. 16-2689, 2017 WL 11685868, at *6 (E.D.N.Y. July 14, 2017) (pointing out that "[a]voidance of piecemeal litigation is of paramount importance in a *Colorado River* analysis"). This factor weighs in favor of abstention when "the state and federal issues are 'inextricably linked,'" and "a potential exists for 'inconsistent and mutually contradictory determinations.'" *See De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) (quoting *General Reinsurance Corp. v. CIBA-GEIGY Corp.*, 853 F2d 78, 81 (2d Cir. 1988)). However, as the Second Circuit has noted:

> [T]he primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties.

*Woodford*, 239 F.3d at 524.

As Defendants argue in their briefing, should Defendants' summary judgment motion be granted in the State Court Action, Plaintiff's § 1681s-2(b) will likely be barred by *res judicata*. *See* Defs.' Mem. at 15–18; Reply at 15–17. Yet this fact actually mitigates the extent to which the risk of piecemeal litigation favors abstention, since there is a chance that the State Court Action "will either preclude

recovery completely or collaterally estop the relitigation of substantive issues in this action, thus alleviating the risk of duplicative effort and varied results." *See Phillips*, 252 F. Supp. at 300.

4. Chronological Order and Progression of the Actions

While the State Court Action was filed before the present one, this fact alone is not enough to warrant abstention. The significance of the order in which jurisdiction was obtained turns on "how much progress has been made in the two actions." *Vill. of Westfield*, 170 F.3d at 122 (quoting *Moses H. Cone*, 460 U.S. at 21). Furthermore, "where there has been limited progress in a state court suit, 'the fact that the state action was commenced before the federal suit carries little weight.'" *Id.* (citation omitted).

Defendants focus on the fact that the State Court Action was filed over three months before the present action and that their summary judgment motion in that action has been pending since January 2026. *See* Defs.' Mem. at 18–19; Reply at 17–18. There has been little to no activity within the State Court Action since March 31, 2026, when the Civil Court held a pre-trial conference, as well as a hearing regarding Defendants' motion — on which it reserved a decision. *See* No. CV-016370-25/KI, Mot. Seq. No. 001 (Mar. 31, 2026). This appearance followed an inquest on November 18, 2025; a pre-trial conference on January 27, 2026; and another motion hearing on March 4, 2026. *See* No. CV-016370-25/KI.

Like in the State Court Action, here, Defendants have also submitted a fully dispositive motion to dismiss. However, the Court has held a pre-motion conference

(on April 16, 2026), an initial conference (on April 17, 2026), a settlement conference (on May 19, 2026), and multiple discovery conferences (on July 27, 2026, and September 11, 2026). Min. Entries dated Apr. 17, 2026; May 19, 2026; July 27, 2026; Sep. 11, 2026. The parties engaged in limited, pre-settlement discovery before May 1, 2026, and full discovery has been underway since at least July 2026. *See* Dkt. Order dated July 7, 2026. Specifically, they have exchanged Rule 26(a)(1) disclosures, hundreds of pages of discovery documents, and interrogatory demands and responses. *See* ECF No. 55 at 1–3; ECF No. 56 at 1–2; Dkt. Order dated July 7, 2026. Plaintiff has also served a third-party upon Equifax, and discovery is anticipated to close on December 30, 2026. *See* ECF No. 68; Min. Entry dated Sep. 11, 2026; Order to Show Cause dated Sep. 29, 2026.

Because both the state and federal actions have pending dispositive motions, but discovery is only underway in the present action, this action has progressed further than the State Court Action. *Cf. Gibson*, 2017 WL 11685868, at *6 (finding the fourth factor weighed against abstention — despite the state action commencing one year before the federal action — because the parties had only participated in a settlement conference and an informal discovery exchange in the state action, but had served written responses to interrogatories and requests for documents, scheduled depositions, identified experts, and served Rule 26 disclosures in the federal action). The fourth factor thus weighs against abstention.

5. Applicable Law

In the Amended Complaint, Plaintiff brings only federal claims before this Court. The fifth factor thus weighs against abstention. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 101 (2d Cir. 2012) ("When the applicable substantive law is federal, abstention is disfavored." (quoting *Vill. of Westfield*, 170 F.3d at 123–24)).

6. Adequacy of State Proceedings

There is little reason to doubt that "New York courts provide a fair alternative forum that is capable of resolving" Plaintiff's federal claims. *See Niagara Mohawk*, 673 F.3d at 103. Indeed, he can bring FCRA claims "in any . . . court of competent jurisdiction." *See* 15 U.S.C. § 1681p. That said, Plaintiff is entitled to bring his FCRA claims in federal court. *See Woodford*, 239 F.3d at 525. Thus, at best, the sixth factor is neutral and ultimately weighs against abstention.[6]

[6] Plaintiff emphasizes the New York City Civil Court's limited jurisdictional capacity as a reason why the sixth factor should weigh against abstention. *See* Pl.'s Opp'n at 26–27. He is correct that his damages would be capped at $50,000 and that he would be unable to obtain declaratory relief from the Civil Court. *See* City Civ. Ct. Act §§ 202, 212-a (limiting the court's declaratory judgment jurisdiction to controversy involving the obligation of insurers or certain arbitration awards). However, courts in this Circuit have held that declaratory relief is likewise unavailable under the FCRA. *See Hines v. Equifax Info. Servs., LLC*, No. 19-CV-6701 (RPK) (RER), 2022 WL 2841909, at *11 n.6 (E.D.N.Y. July 16, 2022); R. & R. at *8, *Hintermaier v. Equifax Info. Servs. LLC*, No. 24-CV-09697 (ALC) (RFT), 2025 WL 4377764 (S.D.N.Y. Nov. 26, 2025). And neither the cap on damages nor the Civil Court's electronic docket update system, *see* Pl.'s Opp'n at 26–28, undermine the Civil Court's legal capacity to protect Plaintiff's federal rights.

Conclusion

The Court finds that *Colorado River* factors one, two, four, and five weigh against abstention and factor six is neutral. Only factor three potentially weighs in favor of abstention, and, while this factor is an important one in the *Colorado River* analysis, it alone is insufficient to warrant abstention here. Thus, even if the Court were to conclude that the State Court Action is parallel to the present case (which it does not), it would still retain jurisdiction under the *Colorado River* analysis.

## CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is denied. Plaintiff's motion to strike is also denied as moot.

**SO ORDERED.**

Dated: November 10, 2026
Brooklyn, New York

*/s/ Nina R. Morrison*

Nina R. Morrison
United States District Judge